Filed 1/21/25  P. v. Pheng CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## THIRD APPELLATE DISTRICT
### (San Joaquin)
----

| | |
|---|---|
| THE PEOPLE, | C100162 |
| Plaintiff and Respondent, | (Super. Ct. Nos. STK-CR-FE-2005-0007218, SF095149A) |
| v. | |
| REACHHETRA PHENG, | |
| Defendant and Appellant. | |

In 2006, the trial court sentenced defendant Reachhetra Pheng to 40 years to life. In 2023, the trial court denied defendant's petition for resentencing filed pursuant to Penal Code section 1170, subdivision (d)(1) (statutory section citations that follow are to the Penal Code, unless otherwise stated) because defendant had not been sentenced to life without parole or its equivalent.  On appeal, defendant argues his sentence was a de facto life without parole sentence and he was thus eligible for relief.  We affirm the trial court's order.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was 15 at the time of his offense. On February 21, 2005, defendant and several other members of his street gang ran into a member of a rival gang. Defendant, along with eight or nine other gang members, left their car and approached the rival. Defendant shot and killed him. In his defense, defendant testified someone else shot the victim.

As relevant here, the jury found defendant guilty of second degree murder and found true he personally discharged a firearm causing the victim great bodily injury. (§§ 187, 12022.53, subds.(d) & (e)(1).) The trial court sentenced defendant to 15 years to life for the murder and a consecutive 25 years to life for the firearm enhancement. The trial court stayed the sentences for the multiple remaining convictions and enhancement.

In 2023, defendant filed a petition seeking to have his sentence recalled and for a new sentencing hearing pursuant to section 1170, subdivision (d)(1). He did not argue his sentence amounted to a de facto life without parole sentence. The trial court denied the petition finding defendant's sentence was not a life without parole sentence, nor its functional equivalent.

Defendant filed a timely notice of appeal.

DISCUSSION

Defendant argues the trial court erred in finding his 40-year-to-life sentence was not the functional equivalent of life without parole and thus he was entitled to be resentenced under section 1170, subdivision (d).

Section 1170, subdivision (d) provides, "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." Under its express terms, this resentencing opportunity is limited to

2

juvenile defendants who have been sentenced to life without a parole term.  (§ 1170, subd. (d)(1)(A).)

*People v. Heard* (2022) 83 Cal.App.5th 608 extended the reach of this statute. There, the trial court sentenced the minor defendant to 23 years plus 80 years to life for two counts of willful, deliberate, and premeditated murder, along with enhancements for committing the crime for the benefit of a criminal street gang and using a firearm and voluntary manslaughter.  (*Id.* at pp. 613-614.)  In rejecting his subsequent petition for resentencing, the trial court concluded this sentence was not a life without parole and he was therefore statutorily ineligible for resentencing under section 1170, subdivision (d). (*Heard,* at pp. 621-622.)

The appellate court agreed the trial court's ruling was correct as a matter of statutory interpretation.  (*People v. Heard*, *supra*, 83 Cal.App.5th at p. 626.)  But the appellate court further concluded that denying juvenile offenders who were sentenced to the functional equivalent of life without parole the opportunity to petition for resentencing violates the constitutional guarantee of equal protection.  (*Ibid*.)  In examining defendant's sentence, the appellate court concluded because defendant would have to serve 103 years before becoming eligible for parole, his sentence was a de facto life without parole sentence.  (*Id.* at p. 629.)  The appellate court was "unable to identify a rational basis for making juveniles sentenced to an explicitly designated life without parole term, but not juveniles sentenced to the functional equivalent of life without parole, eligible to petition for resentencing under section 1170, subdivision (d)(1).  As a consequence, denying [the defendant] the opportunity to petition for resentencing under this provision violates his right to equal protection of the laws."  (*Id.* at pp. 633-634, fn. omitted.)

Here, this case turns on the question of whether defendant's sentence of 40 years to life for his homicide and firearm enhancement is the functional equivalent of life without parole.  We conclude it is not.

*People v. Franklin* (2016) 63 Cal.4th 261 provides us with guidance. In *Franklin,* the defendant was convicted of a first degree murder he committed when he was 16 years old and sentenced to 50 years to life in prison. (*Id.* at p. 268.) The defendant was entitled to parole consideration after 25 years pursuant to section 3051. (*Id.* at p. 269.) In discussing its prior precedent that a 110-year-sentence was the functional equivalent of life without parole, the *Franklin* court noted that defendant's life expectancy was a relevant factor in determining whether the sentence is the functional equivalent for a murderer. (*Id.* at p. 276, [quoting from *Sumner v. Shuman* (1987) 483 U.S. 66, 83, ["there is no basis for distinguishing . . . between an inmate serving a life sentence without possibility of parole and a person serving several sentences of a number of years, the total of which exceeds his normal life expectancy"].) The *Franklin* court continued, "we did not further elaborate what it means for a sentence to be the 'functional equivalent' of [life without parole], and we left open how our holding should be applied in the case of a juvenile homicide offender." (*Franklin,* at p. 276.) Ultimately, the *Franklin* court concluded that the de facto sentence the defendant received (25 years to life) was not the functional equivalent of life without parole. (*Id.* at p. 279.)

In support of his appeal, defendant cites *People v. Contreras* (2018) 4 Cal.5th 349. There, the Supreme Court held that sentences of 50 years to life and 58 years to life for nonhomicide offenses committed by two 16-year-old defendants violated the Eighth Amendment. (*Id*. at p. 356.) As a result, it directed the trial court on remand to consider "any mitigating circumstances of defendants' crimes and lives, and the impact of any new legislation and regulations on appropriate sentencing." (*Id*. at p. 383.) The *Contreras* court acknowledged its holding in *Franklin* that 25 years to life was not the functional equivalent of life without parole. (*Id.* at p. 359.) The *Contreras* court, however, rejected the Attorney General's proffered "life expectancy" test as the bright line arbiter of whether a sentence is the functional equivalent of life without parole. (*Id.* at pp. 368-370.) It did so because that test would in and of itself potentially inject discriminatory

4

treatment for persons based on their life expectancy noting that women often live longer than men and certain groups live longer than others.  (*Id.* at pp. 361-363.)

Turning to the specific sentences imposed in its case, the *Contreras* court concluded the term of 50 years to life would not allow a juvenile offender to rejoin society for a sufficient period to achieve reintegration as a productive and respective member of the citizenry.  (*People v. Contreras*, *supra*, 4 Cal.5th. at p. 368.)  The court further concluded a 50-year-to-life sentence for a juvenile -- that contemplates returning defendant to society in his late sixties or early seventies -- would deny the defendant the incentives to change going forward and has an attenuated relationship to any penological goals for nonhomicide offenders.  (*Id.* at pp. 368-369.)  Further, the conclusion that this sentence was a functional equivalent of a life without parole sentence was consistent with conclusions reached in other states.  (*Id.* at p. 369 [citing examples of sentences of 50 years, 45 years to life, 75 years [with parole eligibility at 52.5 years], 57 years [with a possible reduction to 50 years].)

Here, defendant will first be eligible for parole consideration in 2030 at the age of 40.  (§ 3051, subd. (b)(3).)  A release at this point provides defendant with a meaningful opportunity to rejoin society for a sufficient period to achieve reintegration as a productive and respective member of the citizenry.

Further, even if he were required to serve the entire 40 years prior to being considered for parole, he will still only be 55 years old.  Thus, he is not serving a sentence like the 103-year-to-life sentence given to the defendant in *Heard*.  While we conclude the *Contreras* limitation of 50 years to life for nonhomicide offenses does not provide us with relevant guidance for this juvenile murderer, we also conclude the potential for defendant's release at 55 years of age is fundamentally different than a release a decade later in his late sixties or into his seventies.  This release date also gives defendant the opportunity to rejoin society for a sufficient period to achieve reintegration as a productive and respective member of the citizenry.  It further provides him with an

5

incentive to change for the better while he is in prison and is in line with the penological goals for sentencing murderers. We thus conclude the trial court did not err in finding this sentence is not the functional equivalent of life without parole and thus defendant is not eligible for relief pursuant to section 1170, subdivision (d).

## DISPOSITION

The order denying the defendant's petition is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
KRAUSE, J.

_____
MESIWALA, J.